**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE**

| | |
|---|---|
| JULIAN P. KASSNER, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> KADLEC REGIONAL MEDICAL CENTER, a nonprofit corporation; KADLEC HEALTH SYSTEM, a nonprofit corporation; and COLUMBIA BASIN IMAGING, P.C., a professional corporation, <br><br> Defendants. | NO. **CV-11-5114-RMP** <br><br> COMPLAINT AND JURY DEMAND |

COMES NOW the Plaintiff JULIAN P. KASSNER, M.D. (hereinafter, "Plaintiff"), and complains of Defendants KADLEC REGIONAL MEDICAL CENTER, a Washington nonprofit corporation, KADLEC HEALTH SYSTEM, a Washington nonprofit corporation (collectively hereinafter, "Kadlec"), and COLUMBIA BASIN IMAGING, P.C. (hereinafter, "CBI") upon information and belief as follows:

## I. NATURE OF THE CASE

1. This case arises from an anticompetitive agreement between Kadlec and CBI to recruit and induce Plaintiff to relocate and transition his radiology practice to the Tri-Cities area from outside of Washington State, then exclude him from competing with them when his relationship with CBI ended. Before accepting employment with CBI, Plaintiff was a Board

COMPLAINT AND JURY DEMAND - 1

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

1   Certified Radiologists who practiced in Maryland and served as Director of the Breast Care

2   Center at the National Naval Medical Center in Bethesda.

3       2.      Plaintiff was intentionally and specifically recruited by Kadlec and CBI to direct and

4   further develop all of Kadlec's women's imaging programs and to serve as a general radiologist

5   with full staff privileges at Kadlec.

6       3.      Kadlec and CBI required a radiologist with exceptional professional standing,

7   significant management experience, and advanced clinical skills in women's imaging in order to

8   expand Kadlec's clinical capabilities and oversee all aspects of Kadlec's breast cancer imaging

9   programs, including quality assurance.

10      4.      In addition to developing and improving existing services, Plaintiff initiated new

11  clinical services provided by no other hospital or physician group in the region, including:

12  Kadlec's High Risk Breast Screening Program, Kadlec's breast MRI biopsy program, and

13  Kadlec's Breast MRI staging program, which allowed for neoadjavent chemotherapy protocols.

14  Prior to Plaintiff's employment, the Tri-Cities region (and specifically Benton and Franklin

15  County markets) had no radiology practitioners capable of providing these services.

16      5.      Plaintiff drafted and implemented a business plan that resulted in dramatic growth

17  across all of Kadlec's women's imaging programs, which significantly improved outcome

18  statistics, including breast cancer detection rates.

19      6.      Without informing Plaintiff, CBI and Kadlec entered into the Hospital Based

20  Physician Services Agreement, dated November 23, 2005 (the "Services Agreement"), for the

21  exclusive performance of radiology services within Kadlec's medical center facilities,

22  contracting, among other things, to prevent Plaintiff from practicing or competing with Kadlec

23  and CBI within the entire Benton and Franklin County markets, in violation of federal law.

24

25

**COMPLAINT AND JURY DEMAND - 2**

7.     Plaintiff was not informed by Kadlec or CBI of the Services Agreement and he was not asked to sign any agreement acknowledging or accepting the onerous terms of the Services Agreement, which would later be imposed on him by Kadlec and CBI.

8.     In 2007, pursuant to the terms of the Services Agreement, Kadlec and CBI cooperated to force Plaintiff out of the market for all radiology services including women's imaging.  At the time Plaintiff was uprooted and forced out of the community, he owned a home, had two children enrolled in local schools and a wife who was six months pregnant with medical complications.

9.     The anticompetitive actions of Kadlec and CBI limited the community's access to medical care including clinical services relating to the early detection, diagnosis, and treatment of breast cancer:  a fatal, but potentially treatable medical condition.  The illegal conduct caused financial and emotional harm and additionally deprived the community of life-saving radiology services.

### III. REGULATORY FRAMEWORK

10.     Pursuant to 42 U.S.C. § 1395nn (the "Stark Laws"), and specifically, § 1395nn(e)(5) and 42 C.F.R. § 411.357(e)(4)(vi), when a hospital provides financial support to a physician practice group to recruit a physician from a distant geographic location, the hospital and physician practice group are prohibited from imposing anticompetitive practice restrictions on the recruited and relocated physician.  *See also* Exhibit A, "Stark II Physician Recruiting Exceptions:  Benefits and Challenges" in Recruiting Physicians Today, Volume 13 No. 1 Jan./Feb. 2005, a publication of the New England Journal of Medicine.

11.     The Stark Laws, which generally prohibit recruitment subsidies as illegal kickbacks, specifically provide an exception for subsidy payments that support long-distance physician recruiting, where the Stark Laws recognizes that certain markets alone may not provide

**COMPLAINT AND JURY DEMAND - 3**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

1    sufficient incentive to encourage a needed physician to relocate his or her practice to an

2    underserved area. *Id.*

3        12.    "The rationale for this rule is that the hospital is assisting in recruitment in order to

4    provide medical services needed in the community. If the recruited physician is subsequently

5    required to leave the area due to a non-compete, community need is not being met." *Id.*

6        13.    Recognizing an unmet need in the Benton and Franklin County markets for specialty

7    radiology services, Kadlec committed over $200,000 in recruitment subsidies to CBI, to secure

8    Plaintiff's recruitment.

9        14.    Payment of the recruitment subsidy with respect to Plaintiff's employment

10   implicates the restrictions articulated within 42 C.F.R. § 411.357(e)(4)(vi).

11       15.    The Department of Health and Human Services ("DHHS") has established that

12   anticompetitive measures prohibited by 42 C.F.R. § 411.357(e)(4)(vi) are unreasonable where

13   Congress intended to prevent hospitals and physician groups "from making it difficult for a

14   recruited physician to remain in the community and fulfill his or her commitments under the

15   recruitment agreement with the hospital." Department of Health and Human Services, Medicare

16   Program; Physicians' Referrals to Health Care Entities With Which They Have Financial

17   Relationships (Phase III), 72 F.R. 51012, 51054 (September 5, 2007, *effective* December 4,

18   2007).

19       16.    DHHS later reiterated that Congress's intent with the physician recruiting provisions

20   of the Stark Laws was to prevent unreasonable anticompetitive agreements related to physician

21   recruiting where "the potential for program and patient abuse in the form of anticompetitive

22   behavior or over-utilization exists . . . ." DHHS, 72 F.R. at 51054.

23       17.    DHHS further established that Congress intended to prevent such unreasonable

24   anticompetitive financial arrangements between hospitals and physician groups where "those

25   relationships discourage other providers from entering a market in which patients are primarily

**COMPLAINT AND JURY DEMAND - 4**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

1  referred to physician-owned entities" and where such unreasonable "[a]nti-competitive behavior

2  can increase [healthcare] costs if the [hospitals] with which physicians have financial

3  relationships are favored over other, more cost-efficient providers or providers that furnish

4  higher quality care." DHHS, 72 F.R. at 51078.

5  ## II. PARTIES, JURISDICTION, AND VENUE

6  18.   Plaintiff currently resides in Longwood, Florida.

7  19.   Kadlec operates a medical center servicing the health care needs of the Tri-cities

8  region in Richland, Washington.

9  20.   CBI is a professional corporation doing business in Richland, Washington.

10  21.   Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331 and 1367.

11  22.   Venue in this Court is proper under 28 U.S.C. § 1391.

12  ## III. STATEMENT OF FACTS

13  ### A. Plaintiff's Recruitment and Relocation to The Tri-Cities

14  23.   Prior to September 16, 2005, Plaintiff was the Director of the Breast Care Center at

15  the National Naval Medical Center, in Bethesda, Maryland.

16  24.   Plaintiff's clinical and management experience made him an extremely desirable

17  candidate for prospective employers and Plaintiff received multiple alternative job offers during

18  this period of time.

19  25.   Both CBI and Kadlec aggressively recruited and incentivized Plaintiff to accept

20  employment and to relocate his women's imaging practice and his family to the Tri-Cities.

21  26.   To attract prospective candidates, CBI delivered a recruitment letter and packet to

22  Plaintiff documenting CBI's overall annual growth rate, as well as the prior radiologist income

23  specifically derived from mammography, which was estimated at $500,000 and $600,000 per

24  year.

25

**COMPLAINT AND JURY DEMAND - 5**

27.    Kadlec and CBI both highlighted the lack of competition for women's imaging and other radiological services within the Benton and Franklin County markets during recruitment meetings and presentations.

28.    Upon the representations made by Kadlec and CBI representatives, Plaintiff agreed to relocate his family and medical practice from Bethesda, Maryland to Richland, Washington, a distance of over 2,500 miles.   Plaintiff and CBI executed a Nonshareholder Employment Agreement, dated September 16, 2005 (the "Employment Agreement").

29.    Attached as Exhibit B hereto is a true and correct copy of the executed Nonshareholder Employment agreement between CBI and Plaintiff.

30.    CBI included, among other things, a non-competition provision in the Employment Agreement, in violation of 42 U.S.C. § 1395nn(e)(5) and 42 C.F.R. § 411.357(e).

31.    The non-competition provision in Exhibit B is unenforceable, but Defendants claimed it was enforceable, asserted that they would enforce it, and forced Plaintiff to relocate through those claims and assertions.

32.    The non-competition provision included in Plaintiff's employment contract purported to block Plaintiff from practicing diagnostic or interventional radiology within 25-miles of the city limits of Richland, WA for 3 years upon termination of employment with CBI. This geographic area includes the entire Benton and Franklin County area.   The noncompetition clause also purported to block Plaintiff from soliciting any patients, physicians, hospitals, or institutions CBI does business, without any geographic limitation or expiration date.

33.    At the time of his recruitment, Plaintiff was given a copy of the Kadlec Medical Staff Bylaws (the "Bylaws").

34.    Plaintiff reviewed the Bylaws prior to applying for staff privileges at Kadlec or accepting CBI's employment offer.   The terms of staff privileges at Kadlec as detailed in the

COMPLAINT AND JURY DEMAND - 6

1    Bylaws were critical to Plaintiff's decision to accept CBI's employment offer, apply for Kadlec

2    staff privileges, and relocate to Richland, Washington.

3        35.    As part of Plaintiff's initial application for provisional staff privileges at Kadlec, and

4    subsequent application for reappointment to the active medical staff, Plaintiff was required to

5    sign documents affirming that he read the Bylaws and agreed to abide by the Bylaws.

6        36.    The Bylaws detail the responsibilities, rights, and due process protections that

7    applied to Plaintiff upon being granted staff privileges at Kadlec.

8        37.    Plaintiff never received any representation or communication indicating that any

9    portion of the Bylaws did not apply to him.    Likewise, Plaintiff never waived any rights,

10    privileges, or due process protections guaranteed to him by virtue of the Bylaws.

11        38.    Plaintiff has never had his medical license or malpractice insurance restricted in

12    anyway.    Plaintiff was never the subject of a disciplinary action or investigation.    Plaintiff was

13    never named in a malpractice suit or legal action.

14    **B.  Kadlec Controlled the Market for Women's Imaging Services**

15        39.    Plaintiff's skills, experiences, credentials, and efforts enabled CBI and Kadlec to:

16    (a) Further develop and expand existing women's imaging services; (b) Develop and provide

17    new women's imaging services; and (c) Improve quality of care and patient outcome statistics

18    related to women's imaging including breast cancer detection rates.

19        40.    Specifically, Plaintiff's skills, experiences, credentials, and efforts enabled CBI and

20    Kadlec to develop and provide Kadlec's High Risk Breast Screening Program.

21        41.    At the time of Plaintiff's recruitment and employment, Kadlec's High Risk Breast

22    Screening Program was the only specialized program in the Benton and Franklin County region

23    intended to identify and monitor women at high risk for developing breast cancer.

24        42.    At the time of Plaintiff's recruitment and employment, Kadlec offered the only

25    breast MRI service in the Benton and Franklin County region.

COMPLAINT AND JURY DEMAND - 7                **Teller & Associates, PLLC**
                                             1139 34th Ave, Ste B
                                             Seattle, WA  98122
                                             (206) 324-8969  Fax: 860-3172

43.   At the time of Plaintiff's recruitment and employment, Kadlec offered the only comprehensive image guided (minimally invasive) breast biopsy program in the Benton and Franklin County region.

44.   During Plaintiff's employment there was dramatic growth in Kadlec's women's imaging services with disproportionate growth in the advanced services Plaintiff was specifically recruited to provide.

45.   This growth is directly attributable to Plaintiffs presence and contributions.  During Plaintiff's first year:   (a) Mammography volume increase by 6%; (b) Bone DEXA volume increased by 15%; (c) Breast MRI volume increased by 25%; (d) Stereotactic biopsy volume increased by 159%; (e) US guided core biopsy volume increased by 187%; (f) US guided cyst aspirations increased by 177%; (g) MRI guided biopsies were initiated as a new service; (h) A formalized high risk screening program complete with pedigree risk analysis, genetics testing, genetics counseling, adjunctive screening with breast MRI, patient tracking, and patient education and support groups was initiated as a new program.

46.   During Plaintiff's employment there was a dramatic improvement in turnaround times and related service metrics which is attributable to Plaintiffs presence and contributions.

47.   During Plaintiff's employment there was a dramatic improvement in outcome statistic and accepted quality metrics relating to Kadlec's women's imaging which is attributable to Plaintiffs presence and contributions.

48.   During Plaintiff's first year of employment CBI experienced:  (a) a 31% increase in breast cancer detections; (b) a 650% increase in identification of extremely high risk patients with identification of oncogenes; (c) a 21% decrease in the call-back rate for the mammography service; and (d) a 12% increase in the percentage of cancers confirmed using minimally invasive image guided biopsy techniques.

COMPLAINT AND JURY DEMAND - 8

Teller & Associates, PLLC
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

49.    The increased cancer detection rate translates to an additional 15 breast cancers diagnosed by biopsy during Plaintiff's first 7 months of employment or an estimated 26 additional breast cancers detected on an annualized basis.

50.    Every one of these breast cancer detections represents a human life, an opportunity for earlier treatment, and in some cases a life saved.

51.    The increased use of minimally invasive biopsy techniques translates to a reduction in avoidable surgeries and better cosmetic results.

52.    The decreased call-back rate translated to a decrease in unnecessary repeat imaging and a reduction in patient anxiety.

53.    The genetics counseling and testing programs translate to an additional 13 healthy women who now know that their lifetime statistical risk for developing breast cancer is increased, in some cases to greater than 85%, enabling them to take appropriate preventative measures.  Certain genes also result in a greatly increased risk for ovarian cancer, which is preventable if the genetic risk is identified early enough.  Many more patients were provided with valuable information without genetic testing or oncogene identification.

54.    Plaintiff was also a high volume general radiologist who also read thousands of diagnostic studies per year in clinical areas other than women's imaging and broadly contributed to patent care in the community.

55.    Kadlec and CBI also service a large portion of patients from Umatilla County and other Counties within the State of Oregon, where Kadlec is positioned near the border of Oregon and Washington State.

56.    The existence of Kadlec's superior and more comprehensive Women's Imaging Programs provided Kadlec with significant marketing opportunities, operating as a gateway capable of attracting discriminating well insured patients and referring providers, driving the growth of both CBI and Kadlec.

**COMPLAINT AND JURY DEMAND - 9**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

57.    Because Kadlec was the only facility in Benton and Franklin counties offering certain clinical services that Plaintiff provided, Kadlec was able to provide comprehensive care in situations where competing healthcare entities could not.  This gave Kadlec a competitive advantage when competing for a much broader range of healthcare services.  *See* Exhibit C, Kadlec Marketing Materials referencing Dr. Kassner and his work.

58.    Exhibit C is a true and correct copy of a document Kadlec produced and distributed to promote the breast cancer screening and similar services referenced herein.

**C. CBI & Kadlec Contracted and Conspired to Limit Plaintiff's Rights and Prohibit Him from Competing in the Marketplace Independently**

59.    Plaintiff began working at Kadlec Medical Center and at the Kadlec Imaging Center (including the Women's Imaging Center) on July 10, 2006.

60.    Plaintiff was initially given temporary privileges pending official review by the Kadlec's Medical Executive Committee and Kadlec Executive Committee, and on July 26, 2006, Plaintiff was granted provisional medical staff privileges within Kadlec's Department of Radiology for a period of one year.

61.    On July 6, 2007, Plaintiff was granted active medical staff privileges within Kadlec's Department of Radiology for the period of 6/29/2007 to 6/1/2009.

62.    On November 23, 2005, shortly after Plaintiff was recruited, Kadlec and CBI entered into the Hospital Based Physician Services Agreement (the "Services Agreement").

63.    Among other terms of the Services Agreement, Kadlec and CBI agreed that:

(a)        No CBI radiologist shall, directly or indirectly, singly or together with any other person or entity within Benton and Franklin Counties:  (i) enter into a contract or arrangement for or engage generally in the provision of any professional or technical diagnostic imaging services or billing or receiving fees or reimbursement for such services; (ii) apply for or maintain medical staff appointment or privileges at any medical

COMPLAINT AND JURY DEMAND - 10

center or healthcare facility other than Kadlec; (iii) establish a contractual relationship with any medical center or healthcare facility other than Kadlec; (iv) establish, own, operate, manage or direct any other diagnostic imaging services or venture or participate in any way in furnishing the professional or technical component of any diagnostic imaging services or venture or billing or receiving fees or reimbursement for such services or venture; or (v) otherwise compete against Kadlec or its affiliated organizations (the "Restrictive Covenant").

(b)     That this Restrictive Covenant was an essential term of the Services Agreement and Kadlec would not have entered into the Services Agreement without this Restrictive Covenant.

(c)     The policies, rights, procedures, due process and other provisions of the Bylaws, rules and regulations did not apply to Plaintiff's medical staff membership and clinical privileges at Kadlec (an additional "Restrictive Covenant").

(d)     Termination of medical staff membership and clinical privileges pursuant to the Services Agreement would be automatic and Plaintiff would not be entitled to the rights and procedures afforded members of the Medical Staff by the Bylaws rules and regulations (an additional "Restrictive Covenant").

(e)     Each CBI physician, including Plaintiff, would sign a "Joinder Agreement" acknowledging and agreeing to be bound by the terms of the Services Agreement including, without limitation, the forfeiture of rights provided by the Bylaws.

(f)     Kadlec would provide CBI "recruitment support assistance" to recruit needed radiologists, such as Plaintiff, including interview expenses, relocation expenses and 50% of recruiter fees. In exchange Kadlec would have the right to participate in the establishment of the recruited physician's terms of employment and review and approve the recruited physician's employment agreement.

COMPLAINT AND JURY DEMAND - 11

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

(g)      Kadlec would make subsidy payments to CBI, including a "recruitment support subsidy" of $8,333 per month for 24 months for each recruited radiologist, such as Plaintiff, as long as the radiologist agreed to the Restrictive Covenant.   This "recruitment support subsidy" was in addition to reimbursement for actual recruitment expenses detailed in the "recruitment support assistance" section of the Services Agreement.   This monthly "recruitment support subsidy" would automatically be reduced by 50% if the recruited physician became a partner in CBI.

(h)      Kadlec would pay CBI a "base subsidy" of $350,000 per year for among other things, "to secure the participation, cooperation and services of the [CBI] in assisting [Kadlec] enhance its role as a regional referral center . . . ."

64.     Each individual Joinder Agreement required the signature of both a Kadlec Executive and a CBI executive.

65.     Plaintiff was never a party to the Services Agreement and neither signed, nor was he asked to sign, a Joinder Agreement.

66.     Plaintiff was never shown either the Services Agreement or the Joinder Agreement as part of his recruitment or employment negotiations.

67.     Plaintiff would not have relocated his practice to the Benton and Franklin County areas if he was made aware that the terms of the Services Agreement or the Joinder Agreement would be enforced upon him by CBI and Kadlec.

68.     As part of his recruitment and employment negotiations Plaintiff was never told about any of the subsidy payments negotiated between Kadlec and CBI including those directly linked to his own recruitment and employment.

69.     Plaintiff negotiated his contract and relocated, unaware of financial arrangements between Kadlec and CBI that governed his employment.

COMPLAINT AND JURY DEMAND - 12

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

70. Plaintiff negotiated his contract without access to the information necessary to determine which laws and regulations applied to his employment, as required by 42 C.F.R. § 411.357(e).

71. The undisclosed financial arrangements provided CBI with economic incentives that were contrary to Plaintiffs interests and rights under his Employment Agreement and Federal law.

72. Plaintiff would not have accepted the position with CBI or relocated to Richland, Washington had the financial subsidy arrangements been disclosed.

73. During his first year of employment, Plaintiff's individual direct revenue generation for CBI was over $700,000 in professional service fees collected.

74. Plaintiff's revenue generation was the highest of any radiologist at Kadlec or CBI, exceeding the total cost of his salary and benefits by over $200,000 per year.

75. Plaintiff's employment would have been highly profitable for CBI even without any "subsidy" payments from Kadlec in relation to his recruitment or employment.

**D. Kadlec Failed to Fulfill its Obligation to Protect Plaintiff under the Medical Staff Bylaws and Failed to Respond to Plaintiff's Concerns of Starks Law Violations**

76. In June 19, 2007, certain CBI partners refused to allow Plaintiff to be accepted as a partner and shareholder in CBI pursuant to the terms of the Employment Agreement (Exh. A).

77. In June 2007, CBI placed Plaintiff on a 90 day "review period," in derogation of contractual obligations within Plaintiff's Employment Agreement.

78. On July 4, 2007, at 1:14 AM, Dr. Dwayne Brittain, a CBI radiologist and partner, illegally and clandestinely infiltrated Plaintiff's private Kadlec email account without Plaintiff's knowledge or permission.

79. Exhibit D is a true and correct copy of an e-mail created by a CBI partner and sent to other partners and Plaintiff regarding the incident.

COMPLAINT AND JURY DEMAND - 13

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

80.   Dr. Brittain reviewed emails between Plaintiff and Kadlec's Chief Operating Officer, Lane Savitch.

81.   Dr. Brittain forwarded Plaintiff's private emails to partners and representatives of CBI.

82.   Upon learning of Dr. Brittain's actions, Plaintiff reported them to the radiology department's Medical Director, Dr. Shawn Jones.

83.   Dr. Jones confronted Dr. Brittain and Dr. Brittain denied infiltrating Plaintiff's Kadlec email account.

84.   Dr. Jones reported his suspicions of Dr. Brittain to Kadlec requesting an investigation.

85.   Kadlec performed an investigation and concluded that Dr. Brittain had in fact wrongfully accessed Plaintiff's Kadlec email account, transferring emails to himself, other CBI partners, and CBI's attorney, Christopher Mertens.

86.   Dr. Brittain had in fact wrongfully accessed Plaintiff's Kadlec email account, transferring emails to himself, other CBI partners, and CBI's attorney, Christopher Mertens.

87.   Kadlec Chief Financial Officer, Mr. William Wingo, informed Plaintiff that Kadlec would not intervene in the matter, that it was a CBI matter and as an employee of CBI, the Kadlec/CBI Services Agreement established that the protections under the Bylaws did not apply to Plaintiff, including Plaintiff's right to confidential communication and rules of professional conduct put in place to protect the medical staff pursuant to the Bylaws.

88.   Plaintiff's communication with Mr. Wingo was the first time he was made aware of any agreement to alter or compromise his rights under the Staff Bylaws and the first time Plaintiff became aware of a Joinder Agreement, though he was still not provided with a copy of a Joinder Agreement, or asked to sign a Joinder Agreement.

**COMPLAINT AND JURY DEMAND - 14**

89.   On July 20, 2007, Medical Director, Shawn Jones delivered a message to CBI physicians stating that the 90 day review period was wrought with "significant irregularities;" that Dr. Britain's invasion of Plaintiff's privacy was "a criminal and ethical offense;" and that "the monitoring program can't justifiably go on with respectability."  Exhibit D.

90.   On August 30, 2007, CBI delivered a letter to Plaintiff offering him the opportunity to become a shareholder partner with CBI.

91.   Even though Plaintiff was offered the opportunity to become a shareholder in CBI, Plaintiff was still never asked to sign any Joinder Agreement or any other agreement requiring him to consent to the Restrictive Covenants of the Services Agreement including the noncompetition provisions or the waiver of due process rights otherwise provided by the Kadlec Medical Staff Bylaws.

92.   Suddenly, on October 26, 2007, CBI withdrew its previous offer of partnership and informed Plaintiff that:  (a) His employment would terminate at the conclusion of Plaintiff's Employment Agreement; (b) He may not maintain his status as a Kadlec Medical Staff Member beyond July 11, 2008; (c) CBI intended to enforce the noncompetition provision in Plaintiff's employment contract; and (d) Plaintiff would face immediate termination if he were to speak about his employment matters while performing radiology services, speak with anyone at Kadlec about his employment or staff privileges or his separation from CBI, or make any attempt to compete with CBI.

93.   A true and correct copy of this letter is attached as Exhibit D hereto.

94.   Despite CBI's express orders not to discuss employment and separation from CBI under threat of termination, CBI partners and employees made attempts to engage Plaintiff in discussions of employment matters while he was at work performing radiology services.

95.   Plaintiff communicated to Kadlec verbally and in email, stating his concern and that CBI was attempting to force him and his family out of the community.

**COMPLAINT AND JURY DEMAND - 15**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

96.    Exhibit F is a true and correct copy of e-mail communications between Plaintiff and Kadlec Vice President, Medical Staff and Business Development, Bill Wingo.

97.    Kadlec failed to meaningfully and timely respond to or address Plaintiff's complaints.

98.    Kadlec failed to honor Plaintiff's due process rights under the Staff Bylaws.

99.    Kadlec failed to discipline Dr. Brittain for clandestinely invading Plaintiff's private email communications.

100.    After Exh. E, Kadlec refused to meet with Plaintiff or Plaintiff's attorney to discuss Plaintiff's concerns regarding the noncompetition provisions, Kadlec's intentions regarding enforcement of noncompetition provisions, the status of his staff privileges, his rights under the staff bylaws, the appropriate distribution of the recruitment subsidy funds, the security breaches to his email account, or any of Plaintiff's other concerns.

101.    Kadlec was aware that Plaintiff had never signed or consented to the terms of a Joinder Agreement or Services Agreement.

102.    The Services Agreement expressly provides Kadlec with control over employment actions taken by CBI with regards to Plaintiff's employment.

103.    Fearing retaliation and an allegedly "for cause" termination of his medical staff privileges without due process rights provided by the Bylaws, Plaintiff quickly sought and found employment in Florida.

104.    On the morning of November 30th, 2007, Plaintiff personally delivered a letter to CBI and Kadlec stating that, "As a consequence of CBI's letter to me dated October 26, 2007 withdrawing its previous offer of shareholder status and reaffirming CBI's intention to enforce the noncompetition provision of my employment contract I have been aggressively pursuing employment opportunities outside the Tri-Cities." In the same letter Plaintiff went on to inform

**COMPLAINT AND JURY DEMAND - 16**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

1  CBI and Kadlec that he committed to employment in Orlando, Florida and would be leaving the

2  Tri-Cities in early April 2008.

3      105.  As discussed in his letter, Plaintiff's scheduled his departure date for one month after

4  his wife's scheduled C-Section which was the soonest Plaintiff could relocate without exposing

5  his then pregnant wife and future newborn son to unacceptable medical risk.

6      106.  Only thereafter, on December 11, 2007, Christopher Mertens, CBI's attorney, faxed

7  a letter to Plaintiff's attorney stating that CBI would release Plaintiff from the noncompetition

8  provision of the Employment Agreement.

9      107.  This "release letter" from CBI's is dated November 28, 2007, but it was first

10  communicated to Plaintiff's attorney December 11, 2007, 11 days after CBI and Kadlec

11  received Plaintiff's letter stating that he had committed to employment outside of the Tri-Cities.

12      108.  Weeks prior to receiving Plaintiff's November 30th, 2007 letter, CBI was aware of

13  Plaintiff's efforts to leave the Tri-Cities in response to CBI's threats and CBI was specifically

14  aware of Plaintiff's job offer in Florida.

15      109.  In early November 2007, Dr. Brittain, then President of CBI, allowed Plaintiff to

16  modify his schedule, so that he could interview for the position in Florida.

17      110.  On November 6, 2007, Dr. Shawn Jones, the Medical Director of the Department of

18  Radiology and a CBI officer drafted a letter of recommendation to the Florida State Medical

19  Board in support of Plaintiff's application for a Florida Medical License.

20      111.  Neither CBI nor Kadlec ever retracted or denied their commitment to terminate

21  Plaintiff staff privileges on July 11, 2008.

22      112.  Neither CBI nor Kadlec ever retracted or denied their commitment to enforce against

23  Plaintiff the Restrictive Covenants in the Services Agreement, including a noncompetition

24  provision covering all of Benton and Franklin County or the restrictions on Plaintiff's due

25  process protections within the Staff Bylaws.

COMPLAINT AND JURY DEMAND - 17

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

113.  While giving sworn testimony on October 2, 2008, Kadlec's President and CEO Rand Wortman expressed Kadlec's intention to fully enforce the Restrictive Covenants within the Services Agreement despite Kadlec's obligations under the Staff Bylaws, and despite CBI's untimely, misdated, and bad faith claim that it would not enforce its own non-competition terms against Kassner.

## IV. CAUSES OF ACTION

### A.  Kadlec and CBI Violated Federal Antitrust Laws

114.  Plaintiff realleges and incorporates by reference herein the allegations above.

115.  Kadlec and CBI provide over 70% of the imaging services within the Benton and Franklin Counties.

116.  Kadlec and CBI were the only providers of certain radiology services for the Benton and Franklin County markets, including multiple services related to women's imaging that Plaintiff was specifically recruited to provide.  These unique services included:  (a) The only High Risk Breast Cancer Screening Program; (b) The only Breast MRI service; and (c) The only comprehensive minimally-invasive image-guided breast biopsy service.

117.  The existence of Kadlec's superior and comprehensive women's imaging programs provided Kadlec with significant marketing opportunities, serving as a gateway capable of attracting discriminating, well-insured patients and referring providers.

118.  Before executing the Services Agreement Kadlec and/or CBI determined that the market for radiology services in Benton and Franklin Counties was underserved.

119.  Kadlec and/or CBI determined that the market in Benton and Franklin Counties was underserved because quality radiologists failed to relocate to this market.

120.  Kadlec and/or CBI determined that quality radiologists failed to relocate because overall revenue from radiology services was insufficient to adequately compensate quality radiologists when compared to national averages and statistics.

COMPLAINT AND JURY DEMAND - 18

121. There was an unmet medical need for radiology services in the community that would be served by Plaintiff's recruitment.

122. Kadlec committed to pay CBI over $200,000 to recruit Plaintiff.

123. 42 U.S.C. § 1395nn(e)(5) and 42 C.F.R. § 411.357(e) expressly forbids Defendants from entering into any agreement placing anticompetitive restrictions on a recruited relocating physician, when there is limited market supply of medical services the physician is recruited to provide, and when the physician is recruited from outside the Defendants' market area in order to meet this identified market need.

124. When enacting 42 U.S.C. § 1395nn(e)(5) Congress recognized that preventing a physician from practicing in a community, when the physician is needed to meet the medical needs of a community, harms patient choice, undermines the free market, and effectively denies patients access to medical care.

125. The noncompetition clause and other Restrictive Covenants described in the Services Agreement place unreasonable anticompetitive restrictions on Plaintiff's employment as recognized by 42 U.S.C. § 1395nn(e)(5) and 42 C.F.R. § 411.357(e).

126. By committing to enforce the noncompetition clause and other Restrictive Covenants described in the Services Agreement, Kadlec and CBI prevented Plaintiff from remaining in the market to service the unmet need for women's imaging and radiology services.

127. Kadlec's own internal data, and data from the regional tumor registry, document dramatic improvement in all women's imaging outcome statistics during Plaintiff's first year of employment including a 31% increase in breast cancers detected.

128. Defendants' actions denied important and even life-saving medical care to the Benton and Franklin County markets.

129. Forcing Plaintiff out of the community has added to the morbidity and mortality in the community.

**COMPLAINT AND JURY DEMAND - 19**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

130. By blocking Plaintiff from providing competing women's imaging services Kadlec and CBI denied patient choice and gained an unfair market advantage for all consumer directed and referral based medical services.

131. Defendants' conduct directly negatively affected the prices, quantity or quality of mammography and other women's imaging services in the relevant market areas.

132. Defendants' conduct directly negatively affected the prices, quantity or quality of all diagnostic and interventional radiology services in the relevant market areas.

133. Defendants' conduct indirectly negatively affected the prices, quantity or quality of multiple other medical services in the relevant market areas.

134. Kadlec and CBI violated the Sherman Antitrust Act, as amended, by executing and enforcing the Restrictive Covenants within the Services Agreement, placing an impermissible restraint on trade and competition, as well as engaging in an impermissible tying arrangement, for the provision of mammography and other women's imaging services within the markets of Benton and Franklin Counties, among other regions of the Tri-Cities area and parts of Northern Oregon.

135. As a result of Kadlec and CBI's unlawful conduct, competition and consumer choice in the relevant market for mammography and other women's imaging services has suffered by Plaintiff's exclusion from the market, causing Plaintiff to lose revenues in the form of lost fees for services, for which he is entitled to recover in an amount to be determined at trial, but in any event, no less than $5,000,000.00.

136. Plaintiff is entitled to recover three times the amount of his damages determined at trial.

137. Plaintiff is entitled to an award of attorney fees, expert witness fees, and costs incurred herein.

**B. Kadlec and CBI Violated State Consumer Protection Laws**

COMPLAINT AND JURY DEMAND - 20

Teller & Associates, PLLC
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969   Fax: 860-3172

138.  Plaintiff realleges and incorporates by reference herein the allegations above.

139.  Kadlec and CBI violated the State of Washington's law against unfair business practices, pursuant to Chapter 19.86 RCW, by executing and enforcing the Restrictive Covenants within the Services Agreement, placing an impermissible restraint on trade and competition, as well as engaging in an impermissible tying arrangement for the provision of all radiology services including women's imaging services within the markets of Benton and Franklin Counties, among other regions of the Tri-Cities area.

140.  As a result of Kadlec and CBI's unlawful conduct, competition in the relevant market for mammography and other women's imaging services has suffered and Plaintiff has been excluded from the market, losing revenues in the form of lost fees for services, for which he is entitled to recover in an amount to be determined at trial, but in any event, no less than $5,000,000.00.

141.  Plaintiff is entitled to recover three times the amount of his damages determined at trial.

142.  Plaintiff is entitled to an award of attorney fees, expert witness fees, and costs incurred herein.

**C.  Kadlec Breached its Contract with Plaintiff for Medical Staff Privileges, Violating Kadlec's Fiduciary Duty and the Duty of Good Faith and Fair Dealing**

143.  Plaintiff realleges and incorporates by reference herein the allegations above.

144.  Kadlec recruited Plaintiff to relocate his radiology practice across the country in order to bring his expertise regarding women's radiology to Kadlec's facilities and patients.

145.  Plaintiff applied for medical staff privileges within Kadlec's Department of Radiology in conjunction with his agreement to relocate his practice across the country and serve in Kadlec's Department of Radiology.

COMPLAINT AND JURY DEMAND - 21

146. Kadlec accepted Plaintiff's application for medical staff privileges, appointing Plaintiff as a member of the medical staff with privileges in Kadlec's Department of Radiology, while granting Plaintiff various rights afforded by the Bylaws.

147. Kadlec breached the terms of the Bylaws by entering into the Services Agreement with CBI, where Kadlec agreed to, among other things, the terms of the Restrictive Covenants and repudiation of Plaintiff's various rights afforded by the Bylaws.

148. Kadlec breached the terms of the Bylaws when Kadlec failed to take any action to discipline Mr. Brittain for clandestinely invading Plaintiff's private Kadlec email account.

149. Kadlec breached the terms of the Staff Bylaws when the Kadlec determined that Plaintiff would be denied his right to an appropriate work environment including Kadlec's determination that the right to secure communication and confidentiality put in place to protect all members of the medical staff did not apply to Plaintiff.

150. While giving sworn testimony on October 2, 2008, Kadlec's President and CEO, Rand Wortman, expressed Kadlec's intention to fully enforce the Restrictive Covenants within the Services Agreement regardless of whether or not Plaintiff had ever signed the Joinder Agreement.

151. Kadlec violated Plaintiff's contractual rights pursuant to the Bylaws when they executed and chose to enforce provisions of the Services Agreement that restricted Plaintiff's rights, without Plaintiff's consent.

152. Plaintiff has incurred significant damages, expenses and lost revenue as a direct result of Kadlec's breach, for which he is entitled to recover compensatory and consequential damages in an amount to be determined at trial.

**COMPLAINT AND JURY DEMAND - 22**

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

**D.  Plaintiff Relied on Representations Made by Kadlec to his Detriment**

153.  Plaintiff realleges and incorporates by reference herein the allegations above.

154.  Kadlec was extensively involved in Plaintiff's recruitment where Kadlec representatives, including Mr. Wortman, made multiple representations to Plaintiff regarding the benefits and rewards of joining Kadlec's medical staff and relocating his family and radiology practice across the country in order to bring his expertise regarding women's radiology to Kadlec's facilities and patients.

155.  Kadlec intended to induce Plaintiff to rely on these representations such that he would relocate his family and radiology practice across the country, join Kadlec's medical staff, and bring his expertise regarding women's radiology to Kadlec's facilities and patients.

156.  Plaintiff did in fact relocate his family and radiology practice across the country in order to bring his expertise regarding women's radiology to Kadlec's facilities and patients.

157.  Plaintiff's reliance on Kadlec's representations was reasonable.

158.  Plaintiff's reliance on Kadlec's representations was to Plaintiff's detriment where he was forced to relocate his family and his practice out of Benton and Franklin Counties after CBI engaged in illegal, tortious and unjust actions, threatening to enforce an illegal noncompetition provision of Plaintiff's Employment Agreement and immediately terminate Plaintiff's employment for cause; and where Kadlec failed to take any action to protect Plaintiff in the face of CBI's tortuous, illegal and unjust actions.

159.  Plaintiff is entitled to reliance damages in an amount to be determined at trial.

**E.  Kadlec's Misrepresentation & Concealment of the Services Agreement was Knowingly Fraudulent**

160.  Plaintiff realleges and incorporates by reference herein the allegations above.

161.  Without informing Plaintiff, Kadlec chose to enter into a Services Agreement for the provision of radiology services with CBI.

COMPLAINT AND JURY DEMAND - 23

**Teller & Associates, PLLC**
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

162. The Services Agreement purported to deprive Plaintiff of important medical staff privileges and rights granted to him by Kadlec pursuant to the Medical Staff Bylaws.

163. The Services Agreement purported to enforce restrictive and illegal noncompetition provisions preventing Plaintiff from working and attaining partnership at any other physician group or medical facility within Benton and Franklin Counties.

164. Kadlec was in negotiations with CBI while Plaintiff was considering transitioning his radiology practice to Richland, WA, and they executed the Services Agreement after Plaintiff committed to transitioning his family and his practice.

165. Kadlec represented that Plaintiff would retain all the rights and privileges under the Kadlec Staff Bylaws, and provided him with a copy of the Staff Bylaws during his recruitment.

166. Plaintiff would not have relocated cross-country had he received full disclosure of the Restrictive Covenants and subsidy arrangements, including the recruitment support subsidy arrangement, which Kadlec was legally obligated to disclose to Plaintiff by virtue of 42 C.F.R. § 411.357(e)(1)(i) and 42 C.F.R. § 411.357(e)(4)(i).

167. Plaintiff's due process rights granted pursuant to the Staff Bylaws were significant and material to Plaintiff's decision to accept employment and move to Richland, and he had no prior knowledge these rights would not be honored.

168. Kadlec made no effort to inform Plaintiff of the subsidy arrangements, the Restrictive Covenants within the Services Agreement or have Plaintiff sign a Joinder Agreement, despite Kadlec's involvement in Plaintiff's recruitment.

169. Each Joinder Agreement requires the signature of a Kadlec executive. Pursuant to the Services Agreement, execution of a Joinder Agreement required direct participation of the Kadlec executive team.

170. While giving sworn testimony on October 2, 2008, Kadlec's President and CEO, Rand Wortman, expressed Kadlec's intention to fully enforce the Restrictive Covenants within

COMPLAINT AND JURY DEMAND - 24

Teller & Associates, PLLC
1139 34th Ave, Ste B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

the Services Agreement regardless of whether or not Plaintiff had ever signed the Joinder Agreement.

171.  Kadlec's decision to present the Staff Bylaws to Plaintiff without disclosing the Services Agreement or Joinder Agreement constitutes a substantial material misrepresentation committed by Kadlec that induced Plaintiff to apply for staff privileges, relocate, and perform services at Kadlec Medical Center.

172.  As a direct result of Kadlec's misrepresentations, which came to light on October 2, 2008, Plaintiff suffered damages in an amount to be established at trial, having been forced to leave the community, incur significant costs, and obtain less favorable employment elsewhere.

173.  As a further direct result of Kadlec's misrepresentations, Plaintiff suffered severe emotional distress, mental pain and anguish, embarrassment, loss of dignity and self-esteem, sleeplessness, nightmares, nausea and headaches, humiliation, and loss of enjoyment of life for which Plaintiff should recover general damages, in an amount to be established at trial.

**F.  Kadlec's Misrepresentation & Concealment of the Services Agreement was Negligent**

174.  Plaintiff realleges and incorporates by reference herein the allegations above.

175.  Kadlec paid CBI a monthly recruitment subsidy to encourage Plaintiff to relocate his practice to the Benton and Franklin County area.

176.  Kadlec owed Plaintiff a duty to disclose the existence of the Services Agreement, the Restrictive Covenants, and the recruitment subsidy. *See* 42 C.F.R. § 411.357(e)(4)(i).

177.  Even if Kadlec's actions do not meet the standard of deliberate fraud, the failure to disclose the terms of the Service Agreement and was negligent and caused foreseeable harm to Plaintiff.

**G.  Kadlec's Failure to Comply with the Federal Regulations Governing Physician Recruitment was Negligent**

178.  Plaintiff realleges and incorporates by reference herein the allegations above.

COMPLAINT AND JURY DEMAND - 25

Teller & Associates, PLLC
1139 34th Ave, Ste B
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

179. By paying the recruitment subsidy, Kadlec owed Plaintiff a duty to comply with Federal law as provided by 42 U.S.C. § 1395nn(e)(5) and 42 C.F.R. § 411.357(e), which include pass through payment of any recruitment subsidies provided to a physician group, as well as the liberty to retain full staff privileges and compete in the geographic region.

180. Kadlec breached its duty when it failed to ensure that recruitment subsidy payments passed directly to Plaintiff. *See* 42 C.F.R. § 411.357(e)(4)(ii).

181. Kadlec breached its duty when it allowed CBI to enforce noncompetition provisions within the Services Agreement and the Employment Agreement, forcing Plaintiff to leave the community, despite Plaintiffs appeal for Kadlec's involvement. *See* 42 C.F.R. § 411.357(e)(4)(vi).

182. On October 20, 2008, Kadlec's President and CEO, Rand Wortman confirmed that Kadlec made no effort to provide any oversight regarding the allocation of recruitment subsidy funds paid to CBI.

183. On October 20, 2008, Mr. Wortman confirmed that he intended to enforce the terms of the Services Agreement, including Restrictive Covenants, despite the fact that Plaintiff had neither seen nor signed a Joinder Agreement.

184. Kadlec's failure to comply with Federal law resulted in:  (a) CBI illegally retaining over $200,000 in recruitment subsidy payments Plaintiff was legally entitled to; (b) Plaintiff being denied access to material information that he was legally entitled to when negotiating his employment contract and making his decision to relocate to Washington; (c) Financial incentives that undermined his interests, which Plaintiff would have never approved of; and (d) Plaintiff being forced out of Benton and Franklin County area.

185. As a direct cause of Kadlec's negligence, Plaintiff suffered damages to be established at trial, having been forced to leave the community, incurring significant costs, and obtain less favorable employment elsewhere, incurring damages as described above.

COMPLAINT AND JURY DEMAND - 26

186. As a further direct result of Kadlec's negligence, Plaintiff suffered severe emotional distress, mental pain and anguish, embarrassment, loss of dignity and self-esteem, sleeplessness, nightmares, nausea and headaches, humiliation, and loss of enjoyment of life for which Plaintiff should recover general damages.

187. Plaintiff's injuries caused by Kadlec's negligence were reasonably foreseeable.

**H. Kadlec was Unjustly Enriched by Plaintiff's Efforts**

188. Plaintiff realleges and incorporates by reference herein the allegations above.

189. Kadlec received significant economic benefit from Plaintiff's decision to relocate his family and radiology practice cross-country and practice at Kadlec.

190. Plaintiff would not have relocated cross-country had he known about the Restrictive Covenants of the Services Agreement.

191. During the term of Plaintiffs employment, the technical fees billed for and received by Kadlec in relation to the clinical services provided by Plaintiff total several million dollars.

192. During the term of Plaintiffs employment, Kadlec also received the benefit of additional services provided by Plaintiff which did not result in direct billable revenue including call coverage, marketing activities, administrative, management, technical consultation and recruiting services.

193. Plaintiffs name and likeness was used in Kadlec's marketing materials specifically in relation to women's imaging services and to a lesser degree in general radiology.  Including materials published after Kadlec had already determined that Plaintiff would be forced out of the community.  Plaintiffs name and likeness still appears in marketing materials accessible on Kadlec's website, or in the alternative was only recently removed.

194. Kadlec receives ongoing economic benefit from service and efficiency improvement initiated by Plaintiff including clinical programs Plaintiff initiated.

COMPLAINT AND JURY DEMAND - 27

195.  Plaintiff recruited Dr. Tim Gormley, a friend and fellow radiologist who he served with in the Navy.  Dr. Gormley turned down at least 15 other formal job offers throughout the country largely in consideration of his personal relationship with Plaintiff and could not have been recruited if not for Plaintiff's personal relationship and efforts.  Plaintiff would not have facilitated this recruitment had proper disclosure been made about the Joinder Agreement.

196.  Dr. Gormley, the radiologist recruited by Plaintiff, is by far Kadlec's most productive radiologist and Kadlec generates millions of dollars per year on an ongoing basis from his service.

197.  Kadlec was unjustly enriched by Plaintiff's decision to relocate his family and his practice across the country, thereby bring his expertise to Kadlec's radiology department, and Plaintiff is entitled to recover restitution as a direct result of Kadlec's unjust enrichment in an amount to be determined at trial.

**I.  Kadlec Tortiously Interfered with Plaintiff's Business Expectancy**

198.  Plaintiff realleges and incorporates by reference herein the allegations above.

199.  Plaintiff maintained a contractual relationship with CBI.

200.  Kadlec was aware of Plaintiff's business relationship with CBI at the time the Services Agreement was executed.

201.  The Restrictive Covenants within the Services Agreement prevented Plaintiff from engaging in a competing radiology practice within the community and placed enforcement mechanisms on CBI for failing to enforce them.

202.  Plaintiff was forced out of the community by CBI and Kadlec as a direct result of the illegal Restrictive Covenants within the Services Agreement.

203.  While giving sworn testimony on October 2, 2008, Kadlec's President and CEO, Rand Wortman, expressed Kadlec's intention to fully enforce the Restrictive Covenants within

COMPLAINT AND JURY DEMAND - 28

1  the Services Agreement regardless of whether or not Plaintiff had ever signed the Joinder

2  Agreement.

3      204.  As a direct cause of Kadlec's intentional interference, which came to light on

4  October 2, 2008, Plaintiff suffered damages in an amount to be established at trial, having been

5  forced to leave the community, incur significant costs, and obtain less favorable employment

6  elsewhere.

7      205.  As a further direct result of Kadlec's intentional interference, Plaintiff suffered

8  severe emotional distress, mental pain and anguish, embarrassment, loss of dignity and self-

9  esteem, sleeplessness, nightmares, nausea and headaches, humiliation, and loss of enjoyment of

10  life for which Plaintiff should recover general damages, in an amount to be established at trial.

11                    **X.  PRAYER FOR RELIEF**

12      WHEREFORE Plaintiff prays for damages as appropriate to compensate for such

13  breaches and injuries caused to him by Defendants, as described above, under law as

14  appropriate, including:

15      1    Antitrust, contract and tort damages in an amount to be proven at time of trial, but

16  for all non-tort related claims, no less than $5,000,000.00.

17      2    Treble damages in an equal amount to any damages awarded to Plaintiff for

18  Defendants' violations of federal and/or State antitrust and consumer protection laws.

19      3    General damages for emotional distress as a result of Kadlec's tortious conduct;

20      4    Moving expenses and other special damages caused by Kadlec's tortious conduct.

21      5    Other actual damages in amounts to be proven at time of trial;

22      6    Pre-judgment interest;

23      7    Post-judgment interest;

24      8    Reasonable attorney fees and costs;

25      9    Whatever additional damages the court shall deem to be just and equitable.

**COMPLAINT AND JURY DEMAND - 29**

1

## X.  JURY DEMAND

2        Plaintiff herby demands a trial by jury on all issues so triable.

3

4    DATED this 22nd day of July, 2011.

5

6

7
_____
8    Stephen A. Teller, WSBA #23372
     Gregory A. Hitzel, WSBA #39348
9    Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COMPLAINT AND JURY DEMAND - 30**