UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JULIAN P. KASSNER, M.D.

                Plaintiff,

     v.

KADLEC REGIONAL MEDICAL
CENTER, a nonprofit corporation;
KADLEC HEALTH SYSTEM, a
nonprofit corporation; and
COLUMBIA BASIN IMAGING, P.C.,
a professional corporation,

                Defendants.

NO:  CV-11-5114-RMP

ORDER ADDRESSING
DEFENDANTS' MOTIONS

## BACKGROUND

This matter comes before the Court on a motion to dismiss for failure to

state a claim, **ECF No. 20**, by Defendants Kadlec Regional Medical Center and

Kadlec Health System (collectively, "Kadlec"), a motion to compel arbitration, or

in the alternative, dismiss the matter, **ECF No. 45**, by Defendant Columbia Basin

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 1

Imaging P.C. ("CBI"), and a motion to strike the declaration submitted at ECF No. 54, **ECF No. 56**, by Plaintiff Dr. Kassner.

Plaintiff Julian Kassner, MD, filed a complaint on July 25, 2011, alleging the following claims against Kadlec: (1) violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7; (2) violation of the "physician recruitment" exception to the Stark Law, 42 U.S.C. §1395nn(e)(5); (3) negligent failure to comply with federal regulations governing physician recruitment, the Stark Law, 42 U.S.C. § 1395nn; (4) violation of Washington state consumer protection laws by engaging in unfair business practices prohibited by Chapter 19.86 RCW; (5) breach of the contract between Kadlec and Plaintiff for medical staff privileges and breach of the staff bylaws applicable to Plaintiff; (6) detrimental reliance; (7) fraudulent misrepresentation and concealment of an agreement between Kadlec and CBI; (8) negligent misrepresentation and concealment of an agreement between Kadlec and CBI; (9) unjust enrichment; and (10) tortious interference with Plaintiff's business expectancy.  Complaint, ECF No. 1.  Dr. Kassner's complaint alleges the following claims against CBI: (1) violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7; (2) violation of the "physician recruitment" exception to the Stark Law, 42 U.S.C. §1395nn(e)(5); and (3) violation of Washington state consumer protection laws by engaging in unfair business practices prohibited by Chapter 19.86 RCW.

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 2

The Court has reviewed the parties' submitted materials regarding all three motions, has examined the relevant law, and finds that the claims against CBI must be addressed through arbitration while the claims against Kadlec must be dismissed.

## A.    Documents Considered by the Court

As a preliminary matter, the Court addresses Plaintiff's motion, ECF No. 56, to strike the "Medical Staff Bylaws" exhibit, ECF No. 54-1, submitted by Kadlec in conjunction with its reply to the motion to dismiss.  Plaintiff argues that the document should be stricken based on Kadlec's failure to authenticate evidence presented outside of the pleadings.  ECF No. 65.  Kadlec responds with a declaration by the manager of medical staff services for Kadlec attempting to authenticate the document.  ECF No. 65.  Plaintiff, in turn, replies that Kadlec's declarations still fail to authenticate the Bylaws as those in effect during the period of Dr. Kassner's tenure.  ECF No. 68.

In the context of a motion to dismiss, the court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir.1996).  When the court considers matters outside of the pleadings, a motion to dismiss generally must be converted into a motion for summary judgment under Fed. R. Civ. P. 56.  An exception to this rule is that the court's review may extend to include evidence on which the "complaint 'necessarily relies,' if: (1) the

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 3

complaint refers to the document; (2) the document is central to the plaintiff's

claim; and (3) no party questions the authenticity of the copy attached to the 12(b)

(6) motion."  *Daniels–Hall v. Nat' Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.2010)

(citations and internal quotation marks omitted).  The court may also take judicial

notice of "matters of public record" pursuant to Fed. R. Evid. 201(b) without

converting a Fed. R. Civ. P. 12(b)(6) motion into a motion for summary judgment

under Fed. R. Civ. P. 56.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th

Cir. 2001).

Plaintiff's complaint refers to the "Kadlec Medical Staff Bylaws (the

'Bylaws')".  ECF No. 1 at 6.  The Complaint asserts that "Plaintiff reviewed the

Bylaws prior to applying for staff privileges at Kadlec or accepting CBI's

employment offer," and "[t]he terms of staff privileges at Kadlec as detailed in the

Bylaws were critical to Plaintiff's decision to accept CBI's employment offer,

apply for Kadlec staff privileges, and relocate to Richland, Washington."  ECF No.

1 at 6-7.  In addition, according to Plaintiff, the Bylaws form the basis for

Plaintiff's claim that the Services Agreement deprived him of substantive rights.

ECF No. 68 at 4.  However, Plaintiff contests the authenticity of the document

provided by Defendant Kadlec.  Therefore, to consider the Bylaws submitted by

Kadlec, the Court would have to convert Kadlec's motion to dismiss into a

summary judgment motion, governed by Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(d).

Even if the Court were to convert Kadlec's motion to dismiss into a summary judgment motion, which it declines to do, the Court would find that the Bylaws documents submitted by Defendants are insufficiently authenticated to be admissible.  The Bylaws are not a self-authenticating document under Fed. R. Evid. 902.  If documents are to be authenticated through personal knowledge, the proponent of the documents must submit them with the affidavit of a person through whom the documents could be admitted into evidence at trial.  Fed. R. Evid. 803(6); *see Orr v. Bank of Am.,* 285 F.3d 764-773 (9th Cir. 2002).

Kadlec's submission of Donnis Graves' declaration, ECF No. 65, does not assert sufficient foundation to establish personal knowledge regarding who wrote, signed, or approved the Bylaws, when the Bylaws were approved and became effective, or whether and when the Bylaws were amended.  *See* ECF Nos. 65. Kadlec fails to meet the criteria for admission under Fed. R. Evid. 803(6) and Fed. R. Evid. 402, since the effective dates of the proposed exhibit have not been established.  Therefore, the Court finds that the Bylaws are not admissible, **GRANTS** Plaintiff's motion to strike ECF No. 54-1, **ECF No. 56**, and does not rely on that document for the Court's analysis of either Defendant's motion.

### B.    Facts

Kadlec and Columbia Basin Imaging P.C. ("CBI") recruited Dr. Kassner, a radiologist, to relocate from Bethesda, Maryland, to the Tri-Cities area of

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 5

Washington State in approximately September 2005.  Complaint, ECF No. 1 at 1-2, 5.  Dr. Kassner was recruited to improve and expand Kadlec's women's imaging programs and to serve as a general radiologist with full staff privileges at Kadlec. ECF No. 1 at 2.  CBI is a professional corporation, owned by the physician shareholders, that provides diagnostic imaging services for Kadlec.  ECF No. 1-1 at 7.  Dr. Kassner alleges that Kadlec committed to pay over $200,000 to CBI to recruit Plaintiff.  ECF No. 1 at 19.

Dr. Kassner and CBI executed a Nonshareholder Employment Agreement ("Employment Agreement"), dated September 16, 2005, which includes a non-competition provision.  ECF No. 1 at 6; *see also* ECF No. 1-1 at 13-14.  The non-competition provision provides in part:

> In the event of termination of his employment for any reason, [Dr. Kassner] will not, under any circumstances . . .
> 1)      retain or use in any way any information concerning [CBI], its practices, procedures, accounts, either active or inactive, or methods of operation to any person or entity in competition with corporation;
> . . .
> 5) either during the period of [the Employment Agreement] or for a period of three (3) years after its termination, engage, directly or indirectly, solicit business from or participate in the practice of diagnostic or interventional radiology within the city limits of Richland, Washington, or within a twenty-five (25)-mile radius thereof. . . .

ECF No. 1-1 at 13-14.

The Employment Agreement further provided for early termination of the agreement and for arbitration in the event of any dispute arising under the agreement:

> Upon sixty (60) days advance written notice by either party (*with no cause needed*); Corporation may terminate this Agreement before the required sixty (60) day period has run, but it is obligated to continue to pay Physician's compensation and fringe benefits through the end of the notice period.
> . . .
> <u>Disputes.</u>  Any disputes or controversy arising under this Agreement shall be determined and settled by arbitration under the provisions of the Revised Code of Washington ch. 7.04, as now enacted or hereafter amended.  The arbitration award shall be final and binding, and judgment on the award may be entered by any court having competent jurisdiction.

ECF No. 1-1 at 45, 47 (emphasis in original).

Kadlec and CBI entered into a Hospital Based Physician Services Agreement (the "Services Agreement") dated November 23, 2005, allegedly without Dr. Kassner's knowledge.  Dr. Kassner was not a party to the Services Agreement, and Dr. Kassner did not execute a joinder agreement.  ECF No. 1 at 12.

The Services Agreement contained a covenant not to compete, which Plaintiff asserts prohibited CBI's radiologists from competing with Kadlec or obtaining privileges at any nearby health care facility other than Kadlec.  ECF No. 1 at 10-11.

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 7

The Services Agreement also contained the following exception to the covenant not to compete:

> Without limiting the foregoing, the Medical Center further agrees that, in the event that a single Radiologist leaves the Physician Group for any reason at any time during which the Covenant Not to Compete is in effect, the Medical Center will give its consent to such Radiologist becoming employed or otherwise engaged to provide diagnostic imaging services to or by any medical center/hospital, healthcare facility, any physician group or affiliate thereof. . . .

ECF No. 22 at 5.[1]

Dr. Kassner began working at Kadlec and CBI in July 2006. ECF No. 1 at 10. The Employment Agreement provided for a 2-year term of employment ending in July 2008. ECF No. 1-1 at 45. On July 6, 2007, Kadlec granted Dr. Kassner active medical staff privileges within Kadlec's radiology department for a period ending on June 1, 2009. ECF No. 1 at 10. CBI shareholders invited Dr. Kassner to become a shareholder partner within CBI in late August 2007. ECF No. 1 at 15.

---

[1] Although the Services Agreement is not attached to Plaintiff's complaint, it is referred to in the complaint and is central to several of Plaintiff's claims, and Plaintiff does not challenge the authenticity of the copy submitted by Kadlec with the Rule 12(b)(6) motion to dismiss. *See Daniels–Hall*, 629 F.3d at 998.

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 8

The CBI shareholders withdrew their offer of shareholder status in a letter dated October 26, 2007.  ECF No. 1-1 at 25-26.  The CBI shareholders stated in the letter, "We want to honor our current contract with you until it terminates July 11, 2008."  ECF No. 1-1 at 25.  The letter further provided:

> You must not speak to any member of the [Kadlec] administration with the purpose of changing this decision or preserving your status as a medical staff member beyond July 11, 2008, or becoming an employee of [Kadlec], separate from [CBI].  Your employment contract has a non competition [sic] provision that we intend to enforce.  We will not allow you to depreciate the reputation or standing of CBI or its members in any way to the KMC administration, its board members, affiliated foundations, medical staff physicians, other radiologists, department managers, supervisors, nurses, technologists, or patients.  If this occurs, it will be grounds for immediate termination, with 60 days of compensation, as per your contract.

ECF No. 1-1 at 25.

Dr. Kassner left CBI and Richland in April 2008 to assume a position in Orlando, Florida.  ECF No. 1 at 17.  He asserts that he was damaged in the amount of lost fees for services in an amount "no less than $5,000,000.00" and seeks treble damages.  ECF No. 1 at 20.  He also asserts that "Defendants' conduct directly negatively affected the prices, quantity or quality of multiple other medical services in the relevant areas."  ECF No. 1 at 20.

///

///

///

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

## ANALYSIS

### A. Motion to Dismiss by Kadlec

### Fed. R. Civ. P. 12(b)(6) Standard

Under Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion under Rule 12(b)(6), a court must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). The court "draws all reasonable inferences in favor of the plaintiff." *Association for Los Angeles Deputy Sheriffs*, 648 F.3d at 991.

A complaint may be dismissed for failure to state a claim where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (*quoting Iqbal*, 129 S. Ct. at 1949).

### Antitrust and Stark Law Claims

Dr. Kassner's first claims against Kadlec are for violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, and violation of the Stark Law, 42 U.S.C. § 1395nn.

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 10

Plaintiff alleges that Kadlec violated the Sherman Antitrust Act "by executing and enforcing the Restrictive Covenants within the Services Agreement, placing an impermissible restraint on trade and competition, as well as engaging in an impermissible tying arrangement, for the provision of mammography and other women's imaging services within the markets of Benton and Franklin Counties, among other regions of the Tri-Cities areas and parts of Northern Oregon."  ECF No. 1 at 20.

To state a claim under § 1 of the Sherman Antitrust Act,[2] a plaintiff must show "1) that there was a contract, combination, or conspiracy; 2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and 3) that the restraint affected interstate commerce."

_____

[2]  The Court liberally construes Plaintiff's complaint as asserting a claim under § 1 of the Sherman Act, rather than § 2 because Plaintiff's complaint makes no mention of attempted monopolization.  *See* 15 U.S.C. § 2; *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 855, note 11 (9th Cir. 1995) (elements of a claim under § 2 of the Sherman Act are "'(1) specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury.'") (quoting *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 811 (9th Cir.1988)).

1    *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991) (*citing T.W. Elec.*

2    *Serv. v. Pacific Elec. Contrs. Ass'n.*, 809 F.2d 626, 632-33 (9th Cir.1987)), *cert.*

3    *denied*, 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991).  In addition, a

4    plaintiff seeking relief under §1of the Sherman Antitrust Act must show that he

5    suffered an injury resulting from the illegal conduct. *See Christofferson Dairy, Inc.*

6    *v. MMM Sales, Inc.*, 849 F.2d 1168, 1172 (9th Cir.1988).

7            A per se violation of § 1 can occur when a defendant seller engages in an

8    illegal tying arrangement, for which a plaintiff must prove: "(1) that the defendant

9    tied together the sale of two distinct products or services; (2) that the defendant

10   possesses enough power in the tying [(desired)] product market to coerce its

11   customers into purchasing the tied [(forced)] product; and (3) that the tying

12   arrangement affects a 'not insubstantial volume of commerce' in the tied product

13   market."  *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir.

14   2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th

15   Cir. 2003) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S.

16   451, 461-62 (1992))).

17           Both sections 1 and 2 of the Sherman Antitrust Act require a plaintiff to

18   plead a relevant product market affected by the alleged anticompetitive conduct.

19   *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991,

20   996, 998 (9th Cir.2010).  A properly defined product market "includes the pool of

goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir.1988).

Kadlec argues that Dr. Kassner's complaint does not clearly define the product market that was harmed by any alleged anticompetitive conduct related to the Services Agreement. The Court agrees and finds imprecise references to "medical services," "all radiology services," "imaging services," "women's imaging," and "mammography," ECF No. 1 at 1-20, and other descriptions, as the potential product market that Plaintiff contends was unreasonably restrained by Kadlec's Services Agreement with CBI.

Dr. Kassner's complaint does not distinguish specialized services provided at Kadlec from any other radiological services provided in the Tri-Cities area, so there is no basis upon which to evaluate interchangeability for an antitrust claim. Dismissal is proper if an antitrust complaint's market definition is facially unsustainable. *See Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir.2008). Therefore, the Court dismisses Plaintiff's Sherman Antitrust Act claim for lack of a defined product market.

Plaintiff does not adequately frame a claim for antitrust relief in other aspects. Namely, Plaintiff's bare allegation that the Services Agreement is an unreasonable restraint on commerce is speculative in light of the facts alleged by

1    Plaintiff and the terms of the Services Agreement.  Specifically, even if the Court

2    were to find sufficiently plausible factual allegations that Kadlec moved to enforce

3    the Services Agreement against Plaintiff, which it does not find, Plaintiff was not a

4    party to the Services Agreement and the circumstances of Plaintiff's departure

5    from Kadlec and the Tri-Cities area qualify on their face for one of the exceptions

6    to the non-competition clause in the Services Agreement.  *See* ECF No. 22 at 5

7    (exception for a single radiologist).  Moreover, there is no factual allegation of an

8    illegal tying arrangement.

9        Therefore, Plaintiff's factual allegations do not support that there was an

10    unreasonable restraint on trade or services or that he was damaged by any

11    anticompetitive actions by Kadlec.  "[A] plaintiff's obligation to provide the

12    grounds of his entitlement to relief requires more than labels and conclusions, and

13    a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

14    550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation

15    marks and alterations omitted).

16        As for a violation of the Stark Law, 42 U.S.C. § 1395nn, Plaintiff's

17    Complaint appears to forward two separate theories.  First, Plaintiff alleges that the

18    non-competition clause of his Employment Agreement with CBI is unenforceable

19    because of the Stark Law and an implementing regulation.  *See* ECF No. 1 at 19.

20    This is addressed below, in analyzing CBI's motion to compel arbitration.  Second,

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 14

Plaintiff alleges that the noncompetition clause "and other Restrictive Covenants" in the Services Agreement also violate a provision of the Stark Law, 42 U.S.C. §1395nn(e)(5).

The Court finds no authority to support that there is a private right to enforce the Stark Law, as Plaintiff attempts to do by seeking damages for alleged violation of the Stark Law through an Agreement to which he is not a party. *See Saint Agnes Medical Center v. Dogali*, , 2010 WL 307916, * 4 (E.D. Cal. Jan. 19, 2010) (*unpublished decision*) ("The purpose of the Stark Law is to protect the government from Medicare fraud and there is no indication that any private right can be extrapolated therefrom."); *U.S. ex rel. Villafane v. Solinger*, 543 F.Supp.2d 678 (W.D.Ky.2008) ("[n]either the Anti-Kickback law nor the Stark law provides for a private right of enforcement . . .  Nor does the qui tam statute, 31 U.S.C. 3730(b), which allows private persons to bring civil claims for violation of the [False Claims Act], authorize private persons to bring civil claims for violations of the Anti-Kickback and Stark laws outside the context of the FCA").

Moreover, even if the Court were to find a private right of action, a reading of Plaintiff's complaint alongside the text of the Services Agreement fails to elucidate how the provision of the Stark Law upon which Plaintiff relies applies to these circumstances.  For instance, Dr. Kassner alleges:

> Without informing Plaintiff, CBI and Kadlec entered into the Hospital Based Physician Services Agreement, dated November 23, 2005 (the

"Services Agreement"), for the exclusive performance of radiology services within Kadlec's medical center facilities, contracting, among other things, to prevent Plaintiff from practicing or competing with Kadlec and CBI within the entire Benton and Franklin County markets, in violation of federal law.

In 2007, pursuant to the terms of the Services Agreement, Kadlec and CBI cooperated to force Plaintiff out of the market for all radiology services including women's imaging.

The anticompetitive actions of Kadlec and CBI limited the community's access to medical care including clinical services relating to the early detection, diagnosis, and treatment of breast cancer: a fatal, but potentially treatable medical condition.

. . .

42 U.S.C. § 1395nn(e)(5) and 42 C.F.R. § 411.357(e) expressly forbids Defendants from entering into any agreement placing anticompetitive restrictions on a recruited relocating physician, when there is limited market supply of medical services the physician is recruited to provide, and when the physician is recruited from outside the Defendants' market area in order to meet this identified market need.

ECF No. 1 at 2-3, 19.

Section (e)(5) of the Stark Law, 42 U.S.C. § 1395nn, relates to physician recruitment arrangements between a physician and a hospital. Plaintiff is not a party to the Services Agreement between CBI and Kadlec, and there is no requirement in the Services Agreement that any physician at CBI refer patients to the hospital. Plaintiff has not sufficiently stated his entitlement to relief under the Stark Law, nor established his standing to bring such a claim, so this claim is also dismissed. *See Twombly*, 550 U.S. 544.

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 16

## **Washington State Consumer Protection Act Claim**

The Washington Consumer Protect Act ("CPA"), chapter 19.86 RCW, provides in pertinent parts: (1) "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful[,]" RCW 19.86.020; and (2) "[e]very contract, combination, . . . or conspiracy in restraint of trade or commerce is hereby declared unlawful[,]" RCW 19.86.030.  "The purpose of the CPA is to complement the federal antitrust laws in order to protect the public and foster fair and honest competition." *Tanner Elec. Co-op v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 679 (Wash. 1996).

For a suit under RCW 19.86, 020, five elements must be proven; '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Smith v. Stockdale*, 2012 WL 385389, *3 (Wash. App. Div. 2, Feb. 7, 2012); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).  A claim under RCW 19.86.030 is the state equivalent of a claim under § 1 of the Sherman Antitrust Act, and Washington courts may rely on federal law for guidance. *State v. Black*, 100 Wn.2d 793, 799 (Wash. 1984).

Plaintiff's alleged grounds for relief under the CPA are indistinguishable from those underlying his federal antitrust claim. Therefore, the Court dismisses the CPA claim on the same basis.

**State Contract Claim**

Dr. Kassner alleges that Kadlec breached a contractual duty of good faith and fair dealing contained in the hospital Bylaws when it: (1) entered into the Services Agreement with CBI and agreed to "the terms of the Restrictive Covenants and repudiation of Plaintiff's various rights afforded by the Bylaws," ECF No. 1 at 22; and (2) failed to take any action to discipline Dr. Dwane Brittain for allegedly "clandestinely invading Plaintiff's private Kadlec email account" in summer 2007.

A breach of contract claim "is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Independent Forest Mfrs. v. Department of Labor & Indus.*, 78 Wn. App. 707, 712 (Wash. App. Div. 2, 1995) (citing *Larson v. Union Investment & Loan Co.*, 168 Wn. 5 (Wash. 1932); *Alpine Industries, Inc. v. Gohl*, 30 Wash.App. 750 (Wash. App. 1981), *review denied*, 97 Wn.2d 1013 (Wash. 1982).

Plaintiff's breach of contract claim is based on Plaintiff's alleged exclusion from the protections of the Bylaws by a Restrictive Covenant in the Services Agreement. The relevant portion of the Services Agreement has not been made

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 18

available for the Court's examination.  However, for purposes of this analysis, the

Court takes at face value Plaintiff's assertion in his complaint that the Services

Agreement, first, required CBI physicians to sign joinder agreements agreeing to

be bound by the Services Agreement and, second, provided that the policies,

procedures, and rights of the Bylaws do not apply to the Kadlec medical staff

membership of CBI physicians who are subject to the Services Agreement.  ECF

No. 1 at 11.  However, Plaintiff's breach of contract claim is based on a

hypothetical scenario because Plaintiff was not a party to the Services Agreement

and did not execute a joinder.  The Court finds no indication that Plaintiff was ever

subject to the portion of the Restrictive Covenants excluding CBI physicians from

the Bylaws.

        As to the allegation regarding his former colleague's behavior, Dr. Kassner

does not refer to any particular provision of the Bylaws to support that they

imposed an applicable duty, and, as discussed above, the Bylaws are not available

for the Court's review because the Court granted Plaintiff's Motion to Strike, ECF

NO. 56.  Moreover, Plaintiff makes only a bare allegation of damages as to his

breach of contract claim, stating that he "incurred significant damages, expenses

and lost revenue as a direct result of Kadlec's breach . . . ."  *See Wilkerson v.*

*Wegner*, 58 Wn.App. 404, 409-10 (Wash. App. Div. 3, 1990) (speculation

regarding damages does not support a cause of action for breach of contract).  The Court, therefore, dismisses Plaintiff's breach of contract claim.

### State Tort Claims

Plaintiff also alleges state tort claims against Kadlec, including fraudulent misrepresentation and concealment of the Services Agreement, negligent misrepresentation and concealment, detrimental reliance, unjust enrichment, and tortious interference with Plaintiff's business expectancy.  The Court finds that these claims rest on common factual allegations: that Plaintiff was not made aware of the Services Agreement when he was recruited by CBI and Kadlec,[3] that Plaintiff would not have signed a joinder agreement had he been made aware of the Services Agreement and been asked to join the Services Agreement, and that the restrictive covenants in the Services Agreement prevented Plaintiff from "engaging in a competing radiology practice within the community," ECF No. 1 at 28.

The Court further finds that these factual allegations, for reasons discussed throughout this Order, do not raise Plaintiff's right to relief above a speculative level.  Therefore, the Court dismisses Plaintiff's remaining claims against Kadlec.

**B. Motion to Compel Arbitration by CBI**

---

[3] The Court notes that the Services Agreement was executed after Dr. Kassner's Employment Agreement with CBI.  ECF No. 1 at 2, 6.

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 20

CBI moves to compel arbitration of the antitrust, Stark Law, and consumer protection claims that Plaintiff asserts against CBI pursuant to the provision of the Employment Agreement between CBI and Dr. Kassner that requires arbitration of "[a]ny disputes or controversy arising under [the] Agreement."  ECF No. 1-1 at 47.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* mandates that district courts direct the parties to arbitrate issues in which an arbitration agreement has been signed.  *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).  The FAA establishes "a liberal federal policy favoring arbitration agreements."  The "primary substantive provision of the Act," *Moses H. Cone Memorial Hospital v. Mercury Contr. Corp.*, 460 U.S. 1, 24 (1983), provides in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

This provision "requires courts to enforce agreements to arbitrate according to their terms."  *Compucredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (citing *Dean Witter Reynolds*, 470 U.S. at 221).  Arbitration agreements must be enforced according to their terms even "when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary

1    congressional command.'"  *CompuCredit*, 132 S.Ct. at 669 (quoting

2    *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

3           The court's role under the Act is therefore limited to determining (1) whether

4    a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

5    encompasses the dispute at issue.  *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho*

6    *Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000).  If the court orders

7    arbitration, the FAA provides for a stay pending compliance.  9 U.S.C. § 3.

8           Dr. Kassner argues that CBI and Kadlec both used the Services

9    Agreement, rather than the Employment Agreement, to enforce illegal and

10   anticompetitive practice restrictions by refusing Dr. Kassner substantive

11   rights as an active member of the medical staff who should be protected by

12   the staff Bylaws.

13          CBI argues that the only dispute in this case concerns the

14   Employment Agreement, which contains an arbitration clause, and, to

15   support its argument, refers to the fact that the termination letter sent by CBI

16   to Dr. Kassner refers only to the Employment Agreement and not to the

17   Services Agreement.

18          All of Dr. Kassner's claims against CBI are closely related to the

19   Employment Agreement.   The Supreme Court has explicitly held that

20   claims brought under the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, are

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 22

subject to binding arbitration pursuant to the FAA's proarbitration presumption.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985)*; see also Kolev v. Euromotors West/The Auto Gallery*, 658 F.3d 1024, 1030 (9th Cir. 2011).  Dr. Kassner's antitrust claim arises under the Employment Agreement because all actions by CBI alleged in Plaintiff's complaint are related to the Employment Agreement, including its employment of, the negotiations related to shareholder status for Dr. Kassner, and its eventual notice to Dr. Kassner that his employment with CBI would terminate at the conclusion of the 2-year contract.  Therefore, any antitrust claim against CBI must touch on the provisions of the Employment Agreement.

Dr. Kassner's main argument with respect to the Stark Law is that the non-competition clause in the Employment Agreement is unenforceable because it violates 42 U.S.C. § 1395nn(e)(5).  That claim, then, arises under the Employment Agreement because it challenges the enforceability of one of the Agreement's clauses.

Finally, the Washington Consumer Protection Act claims arise out of the Employment Agreement for the same reason that the antitrust claim arises from it.  Looking beyond Plaintiff's generalized allegation that CBI cooperated with Kadlec "to force Plaintiff out of the market," the Court finds

that the specific actions by CBI that Plaintiff alleges are all related to the terms of the Employment Agreement.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Strike, **ECF No. 56**, is **GRANTED**.  ECF No. 54-1 shall be **STRICKEN**.

2. The Kadlec Defendants' Motion to Dismiss, **ECF No. 20,** is **GRANTED**.  Plaintiff's claims with respect to Kadlec are **DISMISSED**.  **Judgment shall be entered with prejudice**.

3. Defendant CBI's Motion to Compel Arbitration**, ECF No. 45**, is **GRANTED**.  The arbitration shall proceed, and this action is **STAYED** and **ADMINISTRATIVELY CLOSED** with respect to all claims against Defendant CBI.  Either party may petition to reopen the case should appropriate circumstances arise.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this 15th day of February 2012.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER ADDRESSING DEFENDANTS' MOTIONS ~ 24